UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

JAMES RAY JONES,

        Defendant.

Case No. CR07-324RSL

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on defendant's "Motion to Dismiss on the Grounds the Statute Exceeds Congress' Power to Regulate Commerce" (Dkt. #18). The Court held a hearing on the motion on December 19, 2007 and heard oral argument from counsel for the government and defendant. For the reasons set forth below, the Court denies defendant's motion to dismiss.

## II. DISCUSSION

**A. Background**

During a search of defendant's house in Mount Vernon, Washington, police officers found one pound of "Military TNT High Explosive." See Dkt. #18 at 2; Dkt. #24 at 2 (Response to Motion to Dismiss). After his arrest, defendant informed the police that he had acquired the explosives at least two years earlier in Everett, Washington. Id. The Bureau of Alcohol,

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS        1

Case 2:07-cr-00324-RSL   Document 31   Filed 12/21/07   Page 2 of 9

Tobacco, Firearms and Explosives has determined that the explosives were manufactured outside of Washington. Id. Defendant is charged with unlawful possession of stolen explosives in violation of 18 U.S.C. § 842(h). See Dkt. #10 (Indictment).

**B. Analysis**

Defendant argues that, as applied to him, § 842(h) is an impermissible attempt by Congress to regulate his "wholly intrastate" possession of explosives. See Dkt. #18. Section 842(h) provides:

> It shall be unlawful for any person to receive, possess, transport, ship, conceal, store, barter, sell, dispose of, or pledge to accept as security for a loan, any stolen explosive materials which are moving as, which are part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce, either before or after such materials were stolen, knowing or having reasonable cause to believe that the explosive materials were stolen.

Congressional regulation of interstate commerce must fall into at least one of three general categories: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce, and (3) activities that substantially affect interstate commerce. See United States v. Lopez, 514 U.S. 549, 558-59 (1995). In its response, the government concedes that this case is properly reviewed under the third category. See Dkt. #24 ("This third category . . . is also the relevant category for consideration of the present case."). In United States v. Morrison, 529 U.S. 598 (2000), the Supreme Court outlined a four-factor framework for determining whether a regulated activity "substantially affects" interstate commerce. Id. at 610-12; see United States v. Adams, 343 F.3d 1024, 1028 (9th Cir. 2003). These factors are: (1) whether the regulated activity is commercial/economic in nature; (2) whether an express jurisdictional element is provided in the statute to limit its reach; (3) whether Congress made express findings about the effects of the proscribed activity on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. Id.

Turning to these factors, the Court first concludes that § 842(h) regulates economic activity and that defendant's conduct falls within the scope of this regulation. Section 842(h)

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                              2

was enacted as part of a comprehensive federal legislative scheme to regulate the sale, storage, transfer or other disposition of explosives in interstate commerce. See United States v. Dawson, 467 F.2d 668, 671 (8th Cir. 1972) (stating that § 842(h) is part of Title XI of the Organized Crime Control Act of 1970, Pub. L. 91-452, § 1101 et seq., 84 Stat. 952, which "represents a seriously conceived and comprehensive attempt by Congress to protect interstate and foreign commerce against disruption by reducing the hazards to persons and property associated with the misuse of explosive materials while protecting the rights and privileges of legitimate users of explosives. This laudable objective is achieved through a detailed and particularized regulation of the importation, manufacture, distribution and storage of explosive materials.").[1]

Even though defendant claims that his possession of the explosives was purely intrastate, the Supreme Court recently pronounced in Gonzales v. Raich, 545 U.S. 1 (2005) that:

> Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. . . . [E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce. We have never required Congress to legislate with scientific exactitude. When Congress decides that the "total incidence" of a practice poses a threat to a national market, it may regulate the entire class. In this vein, we have reiterated that when a general regulatory statute bears a substantial relation to commerce, the de minimus character of individual instances arising under that statute is of no consequence.

Id. at 17 (internal citations and quotation marks omitted).

In the post-9/11 world, the Court has no difficulty concluding under Morrison's first factor that the regulation of stolen explosives is commercial and economic in nature. See United

---

[1] At oral argument, defendant raised the issue of whether the analysis should differ in this case when the explosives are alleged to have been stolen. In Raich, however, the Supreme Court noted that the legality of the commerce at issue is a distinction without difference under the Commerce Clause, stating: "To be sure, the wheat market is a lawful market that Congress sought to protect and stabilize, whereas the marijuana market is an unlawful market that Congress sought to eradicate. This difference, however, is of no constitutional import. It has long been settled that Congress' power to regulate commerce includes the power to prohibit commerce in a particular commodity." Raich, 545 U.S. at 19 n.29.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                                3

States v. Disney, 62 M.J. 46, 51 (C.A.A.F. 2005) ("[I]t is patently obvious that the misuse and unsafe or insecure storage of explosive materials substantially affect interstate commerce. This is a conclusion easily reached before September 11th, 2001, and it is easily reached after that catastrophic day.").

Turning to the second factor, in 1996, Congress amended § 842(h) to include a jurisdictional element, requiring that the stolen explosive materials covered by the statute "are moving as, which are a part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce." In United States v. Cortes, 299 F.3d 1030 (9th Cir. 2002), the Ninth Circuit considered a federal carjacking statute, 18 U.S.C. § 2119, with a similar jurisdictional element to the statute at issue here.[2] In affirming the district court's denial of defendant's motion to dismiss, the Ninth Circuit stated that in "[a]ddressing a nearly identical jurisdictional element in Scarborough v. United States, [431 U.S. 563 (1977)][3] the Supreme Court considered whether proof that an illegally possessed firearm previously traveled in interstate commerce was sufficient to satisfy the nexus between possession of the firearm and commerce. 431 U.S. 563, 564 (1977). The Court answered affirmatively; if the government proved that Scarborough's firearms had at some time traveled in interstate commerce, a sufficiently close nexus between possession of the firearms and commerce was established." Cortes, 299 F.3d at 1037-38. The Court went onto hold:

---

[2] Cortes was convicted under 18 U.S.C. § 2119, which at the time provided, in part: "Whoever with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or intimidation, or attempts to do so, shall . . . be imprisoned." See Cortes, 299 F.3d at 1032.

[3] The Ninth Circuit in Cortes noted that while "[t]he vitality of Scarborough engenders significant debate . . . [u]ntil the Supreme Court tells us otherwise, however, we follow Scarborough unwaveringly." Id. at 1037 n.2. Since, Cortes, the Ninth Circuit has continued to follow Scarborough. See, e.g., United States v. Paopao, 469 F.3d 760, 768 (9th Cir. 2006) (citing Scarborough, 431 U.S. at 575).

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                4

> If the vehicle in question was "transported, shipped, or received," at some point in interstate commerce, a sufficiently close nexus between the vehicle and interstate commerce is established, and the carjacking statute applies. As <u>Scarborough</u> holds, such a jurisdictional element provides the necessary connection between each instance of carjacking covered by the statute and interstate commerce. When the government introduced the parties' stipulation that the 'blue 1996 Oldsmobile . . . was manufactured in Kansas City, Kansas, in 1996, and was transported to the [FBI] in Los Angeles, California," the government sufficiently tied this particular carjacking to interstate commerce. No greater nexus between the carjacking and interstate commerce was required.

<u>Id.</u> at 1037. Other courts have reached the same conclusion. <u>See</u> <u>United States v. Singletary</u>, 268 F.3d 196, 205 (3d Cir. 2001) (reviewing 18 U.S.C. § 922(g)(1), the felon-in-possession statute, and holding under <u>Scarborough</u> that "we conclude that the proof in this case that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element, and therefore, we will affirm the judgment of the District Court.").

For purposes of this motion, defendant acknowledges the explosives were manufactured in another state and crossed into Washington state at some point before defendant's acquisition of the explosives. <u>See</u> Dkt. #24 at 3-4 ("The case presents the issue of whether the government's application of § 842(h) to Mr. Jones's simple possession exceeds Congress's commerce power where the only connection between his possession and interstate commerce <u>is the fact that the explosive was manufactured in another state and moved across state lines before Mr. Jones possessed it</u>.") (emphasis added). Accordingly, there is a sufficiently close nexus between defendant's possession of explosives in this case and commerce.

Under <u>Morrison</u>'s third factor, the stated purpose of § 842(d) and the statute's associated legislative history demonstrate that Congress found illegal use and unsafe storage of contraband explosives to be a substantial hazard to interstate commerce. Congress stated the following purpose for Title XI, which is titled "Regulation of Explosives":

> The Congress hereby declares that <u>the purpose of this title is to protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials</u>. It is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law abiding citizens with respect to the acquisition, possession, storage, or use of explosive materials for industrial, mining, agricultural, or other lawful purposes, or to provide for the imposition by

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                 5

> Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title.

Dawson, 467 F.2d at 671 (citing Congressional Declaration of Purpose) (emphasis added). The House reported:

> Title XI combines the regulatory approach to the distribution and storage of explosives with the strengthened and expanded criminal prohibitions that apply to the intentional misuse of explosives. <u>Its purpose is to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from explosives misuse and unsafe or insecure storage</u>.

H.R. Rep. No. 91-1549 (1970) (emphasis added), reprinted in 1970 U.S.C.C.A.N. 4007, 4013. Furthermore, with respect to § 842(h), the House reported:

> This paragraph prohibits the possession, transportation, shipment, and distribution of stolen explosive materials knowing or having reasonable cause to believe they had been stolen. The committee believes that this total coverage of stolen explosive materials is necessary to the effective operation of any federal explosives regulatory statute because of the special problem presented by such stolen explosive materials and the persons possessing them.

Id. at 4043-4044. Based on these affirmations, the Court concludes that Congress made express findings about the effects of the proscribed activity at issue here, including the unsafe or insecure storage of explosives, on interstate commerce.

Finally, under the fourth factor from Morrison, the Court concludes that the link between the prohibited activity, in this case the prohibition on possession of stolen explosives, and the effect on interstate commerce is not attenuated. As the Supreme Court in Raich emphasized, "[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class." Raich, 545 U.S. at 23 (internal quotation marks and citation omitted). In Raich, the Court indicated that the regulation of the production, distribution, and consumption of a commodity like explosives was "quintessentially economic" and, therefore constitutional, stating: "Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product." Id. at 26 and n.2 (citing 18 U.S.C. § 842(n)(1) (certain plastic explosives)). In this case, defendant's alleged possession of stolen explosives

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                 6

removed explosives from the legal interstate market where they could be monitored and regulated and instead diverted them to defendant's Mount Vernon residence where federal regulations no longer affected their storage and possible reentry into the marketplace. See Disney, 62 M.J. at 51.

For all these reasons, the Court concludes that under Morrison's four factors, defendant's as-applied challenge to the constitutionality of § 842(h) fails.

Even if there had been no showing in this case that the explosives had crossed the Washington border, Ninth Circuit authority following Raich also provides a basis for denying defendant's motion to dismiss. In 2003, the Ninth Circuit in United States v. Stewart, 348 F.3d 1132 (9th Cir. 2003), considered the question whether pursuant to 18 U.S.C. § 922(o), Congress could prohibit the mere possession of homemade machine guns under its Commerce Clause power. Id. at 1133. The Court accepted as part of its decision that the machineguns at issue had not traveled in interstate commerce. Id. at 1136 ("We . . . cannot say that the machineguns themselves—in any recognizable form—traveled in interstate commerce."). In a divided panel, the Ninth Circuit reversed the district court and held that as applied to Stewart, section 922(o) was an invalid exercise of Congress's commerce power. Id. at 1140. After its decision in Raich, however, the Supreme Court granted certiorari, vacated the Ninth Circuit's decision, and remanded. See United States v. Stewart, 545 U.S. 1112 (2005) (mem.). On remand, the Ninth Circuit affirmed the district court and held that § 922(o), which makes it illegal to "transfer or possess a machinegun," could constitutionally be applied to a defendant's intrastate possession of locally manufactured machineguns. United States v. Stewart, 451 F.3d 1071, 1078 (9th Cir. 2006). The Ninth Circuit based its decision on the Supreme Court's Raich opinion upholding the constitutionality of the Controlled Substances Act as applied to the intrastate possession of locally grown marijuana. Id. (citing Gonzales v. Raich, 545 U.S. 1 (2005)). Specifically, the Ninth Circuit found that "Raich stands for the proposition that Congress can ban possession of an object where it has a rational basis for concluding that object might bleed into the interstate

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                                        7

market and affect supply and demand, especially in an area where Congress regulates comprehensively." Id. at 1076-77. The Ninth Circuit went on to find that Congress had a rational basis for concluding that in the aggregate "possession of homemade machineguns could substantially affect interstate commerce in machineguns" because those weapons could "enter the interstate market and affect supply and demand." Id. at 1078. Finally, the Ninth Circuit concluded that it was unnecessary to inquire into the specifics of the defendant's possession because when "a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence." Id. (quoting Raich, 545 U.S. at 17); 1077 ("Since Wickard [v. Filburn, 317 U.S. 111 (1942)], it has been well established that we aggregate intrastate activities in as-applied Commerce Clause challenges. After Raich, the proper focus in that inquiry is not Stewart and his unique homemade machineguns, but all homemade machineguns manufactured intrastate. Moreover, we do not require the government to prove that those activities actually affected interstate commerce; we merely inquire whether Congress had a rational basis for so concluding.") (emphasis in original).

In this case, § 842(h) is part of a comprehensive regulatory scheme, titled "Importation, Manufacture, Distribution and Storage of Explosive Materials," that regulates the importation, manufacture, licensing, sales, transportation and storage of explosive materials. 18 U.S.C. §§ 841-48. In light of this comprehensive regulation, the Court has no doubt that Congress had a rational basis for concluding that locally held stolen explosives in the aggregate could enter the interstate market for explosive materials and affect supply and demand. Since the Court finds a rational basis for banning possession of stolen explosives, the de minimis character of defendant's possession is irrelevant.

//
//

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS                   8

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's "Motion to Dismiss on the Grounds the Statute Exceeds Congress' Power to Regulate Commerce" (Dkt. #18).[4]

DATED this 21st day of December, 2007.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge

---

[4] In closing, the Court notes that this decision is consistent with recent post-Lopez decisions considering the constitutionality of 18 U.S.C. § 842. See Disney, 62 M.J. at 46 (concluding that § 842(h) is a constitutional exercise of Congress' authority under the Commerce Clause); United States v. Folen, 84 F.3d 1103, 1104 (8th Cir. 1996) (rejecting constitutional challenge to § 842(I) and affirming conviction); United States v. Mikels, 1997 U.S. App. Lexis 5967, at *5-6 (9th Cir. Mar. 26, 1997), cert. denied, 522 U.S. 849 (1997) (concluding that "§ 842(h) is a permissible regulation of the market in stolen explosives, and the activities amounting to intrastate incidents of possession of the explosives are an essential part of the overall statutory scheme aimed at regulating this market.  Therefore, the statute is a valid exercise of Congressional power under the Commerce Clause.").